**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| WILLIAM HILL,<br><br>      Plaintiff,<br><br>vs.<br><br>UTAH STATE DEPARTMENT OF WORKFORCE SERVICES,<br><br>      Defendant. | **ORDER AND MEMORANDUM DECISION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No.  2:11cv00739 DN<br><br><br>Judge David Nuffer |

On August 15, 2011, this case was removed from the Third Judicial Court in Salt Lake City, Utah.[1]   Defendant Utah State Department of Workforce Services ("Defendant" or "Department") moved for Summary Judgment[2] and, simultaneously, Plaintiff William Hill ("Plaintiff" or "Hill") moved for Summary Judgment.[3]  In this case *de novo* judicial review of final administrative agency action of the decision of the Department, dated June 20, 2011, regarding the proper calculation of Plaintiff's food stamp entitlement was sought.  Defendant asserted that Plaintiff was properly denied food stamp benefits, and Plaintiff asserted that Defendant improperly included excludable items in his income in rendering a determination as to Plaintiff's food stamp eligibility.  Both Plaintiff and Defendant conceded that the following material facts were undisputed:

---

[1] Docket no. 1, filed August 15, 2011.

[2] Docket no. 10, filed March 13, 2012.

[3] Docket no. 13, filed March 13, 2012.

1.      Hill and his wife are disabled individuals under the terms of Social Security, the Medicaid Program ("Medicaid") and Food Stamp Program ("Food Stamp Program") (collectively the "Programs").  In addition, Hill is over 60 years of age, thus qualifying him as an elderly individual under the Programs pursuant to 7 C.F.R. § 273.9(a).  7 C.F.R. § 273.9(a) causes Hill to be entitled to the "net income" eligibility standards of the Programs.

2.      In late 2010, Hill's mother died leaving him a small inheritance.  Hill transferred $45,000 of the inheritance to the Utah SNAP Fund Inc. (the "Trust") a pooled fund supplemental needs trust set up and qualified pursuant to 42 U.S.C. § 1396 p(d)(4)(C), which excludes assets and income held in the Trust from being included in calculations for determining eligibility for Medicaid for disabled persons.

3.      On January 19, 2011, Hill applied for food stamps.  Hill was verbally advised that his application was being denied because the Department had concluded that his net income exceeded the Food Stamp Program's net income limit, but written notice of denial was not provided.

4.      In reaching its conclusion that Hill's income exceeded the Food Stamp Program's net income limit, the Department identified and counted the following transactions as unearned income:

a.      Transfers within the Trust account.  The trustee maintains two accounts within the Trust, a pooled investment account into which all Trust participants' funds are deposited for investment purposes.  The pooling of assets allows the trustee to maximize returns to the participants through economies of scale.  The second account is a Trust sub-trust checking account within the Trust into which funds are transferred from the investment account from time-

to-time to pay Trust expenses, administration expenses and make vendor payments and to reimburse expenses incurred by participants.  The Department counted as unearned income the transfer of $2,000 in January 2011 and $500 in February 2011 from the investment account to the Trust checking account.

        b.     <u>Transactions within the Trust sub-account</u>.  The amount of $215.24 was paid for Trust administrative expenses.  Payments were for printing of bank checks, online banking fees, postage and trustee fees.  The amount of $947.41 was paid for reimbursement of medical expenses which were for medications.   The amount of $1,197.83 was paid for vendor reimbursements.  These vendor reimbursements were for one month of telephone service, two months of cable TV service, three month's premiums for a life insurance policy on Hill's life, and a one-month bus pass.  Reimbursements were paid to Hill in the amounts of $105 and $180 for clothing purchased by Hill in January and February, respectively.   All of the foregoing amounts were counted as unearned income to Hill.

        5.     Pursuant to the terms of the Trust, Hill cannot control the administration of the Trust nor direct distributions of Trust assets.

        6.     Based upon the verbal denial by the Department, the trustee of the Trust obtained legal assistance for Hill and on April 20, 2011, Hill filed a request for fair hearing.  On May 4, 2011, the Department issued a written notice of denial of Hill's application for food stamps for the month of January 2011.  On May 11, 2011, the Department issued a denial notice for food stamps for the month of February 2011.

        7.     June 15, 2011, an informal hearing was held before an administrative law judge, Valerie Argyle, to consider Hill's appeal of the Department's denial of his application for food

stamps.  The administrative law judge issued a hearing decision and order dated June 20, 2011 upholding the determination of the Department and giving Hill notice of his right to appeal the decision by filing a complaint with the Department or the District Court within 30 days.

8.    July 15, 2011, Hill sought *de novo* judicial review of the administrative law judge's decision by commencing this action.

## ANALYSIS

The Food Stamp program is established and provided for under the Farm Security and Rural Investment Act of 2002 (the "Act") and the Secretary of Agriculture is granted authority to issue regulations necessary for its administration.  7 U.S.C. § 2013(a), (c).  The program provides nutritional assistance to eligible households by issuing at no charge to the households, "food stamps" that can be redeemed for food items at retail stores participating in the program.  7 U.S.C. §§ 2013(a) 2017, 2018.  Although the Food Stamp Program is administered at the national level by the Department of Agriculture, it is administered by state agencies at the local level.  7 U.S.C. §§ 2012(n), 2013(a), 2020.  The state agencies are responsible for determining, in accordance with Uniform National Standards, which applicant households are eligible for the issuance of food stamps in the amount of an eligible household's monthly allotment.  7 U.S.C. §§ 2014(b), 2017, 2020(a).  7 U.S.C. § 2014(b) provides that:

> [E]xcept as otherwise provided in this chapter, the secretary shall establish Uniform National Standards of eligibility . . . for participation by households in the food stamp program in accordance with the provisions of this section.  No plan of operation submitted by a state agency shall be approved unless the standards of eligibility meet those established by the secretary, and no state agency shall impose any other standards of eligibility as a condition of participating in the program.

4

The regulations promulgated by the Secretary of Agriculture and implementing the Act are found at 7 C.F.R. Part 273.

Eligibility for the food stamp program and the amount of benefits a household receives is based on "income" of the household.  7 U.S.C. §§ 2014, 2017 *see also* 7 C.F.R. § 273.10.  When household income reaches a certain level, the household will not be eligible for food stamps, and as income of the eligible household increases, the food stamp monthly allotment will decrease. The Act defines household income to include "all income from whatever source".  7 U.S.C. § 2014(b).  That said, the Act lists specific exclusions and deductions that reduce or are otherwise not counted in calculating "all income from whatever source."  *See* 7 U.S.C. § 2014(d).  These exclusions include, in pertinent part:

> (1)    Any gain or benefit which is not in the form of money payable directly to a household. . . .
>
> (5)    Reimbursements which do not exceed expenses actually incurred and which do not represent a gain or a benefit to the household . . . "

7 U.S.C. § 2014(d).

The regulations also address the status of supplemental needs trusts such as the SNAP Trust Fund.  Specifically, special needs trusts are exempt from being counted as an asset for purposes of food stamp qualification.  7 C.F.R. § 273.8(e)(8).  In calculating Hill's eligibility for food stamps, the Department included as unearned income the transfer of $2,000 in January 2011 and $500 in February 2011 from the Trust investment account to the Trust checking sub-account, of which Hill had no legal ability or right to control.  Hill did not receive any gain or benefit from this transaction (directly, indirectly or functionally), nor were any funds actually available to him as they were held in Trust and he had no legal ability to control such funds.  Further, no

funds were paid to him or for his benefit and no debt or expense was eliminated.  Accordingly, the Department should not have imputed the intra-trust transfers as unearned income to Hill under 7 C.F.R. § 273.9(b)(2)(vi).

Further, the Department included as unearned income to Hill, transfers within the Trust accounts reimbursing the trustee for Trust expenses including bank check printing expenses, online bank fee charges, postage, and trustee fees.  Again there was no gain or benefit to Hill or any money payable directly to the household.

The regulations promulgated pursuant to the Act list several exclusions to income, including "any gain or benefit which is not in the form of money payable directly to the household."  7 C.F.R. § 273.9 (c)(1).

Nevertheless, the Department in support of its position that the transactions should be included in Hill's unearned income calculation, cited to a regulation which provides "unearned income shall include . . . monies which are withdrawn or dividends which are or could be received by a household from *trust funds* considered to be an excludable resource under Section 273.8(a)(8)."  7 C.F.R. § 273.9(b)(2)(vi).  However, the regulation goes on to provide "such trust withdrawals shall be considered to be income in the month received, unless otherwise exempt under the provisions of (c) of this section."  *Id.*

The Department further argued the transactions should be counted as income under Section 273.9(c)(1)(vii), a catchall provision which provides

> <u>Other third party payments</u>.  Other third party payments shall be as follows:  monies legally obligated and otherwise payable to the household which are diverted by the provider of the payment to a third party for a household expense shall be counted as income and not excluded.  If a person or organization makes a payment to a

> third party on behalf of a household using funds that are not owed
> to the household, the payment shall be excluded from income. . . .

However, Section 273.9(c)(1)(v) also provides:  "Vendor payments that are reimbursements. Reimbursements made in the form of vendor payments are excluded on the same basis as reimbursements paid directly to the household in accordance with paragraph (c)(5) of this section."

Section 273.9(c)(5) provides an exclusion from income as follows:

> Reimbursements for past or future expenses, to the extent they do not exceed actual expenses, and do not represent a gain or benefit to the household.  Reimbursements for normal household living expenses such as rent or mortgage, personal clothing, or food eaten at home are a gain or a benefit and therefore are not excluded.  To be excluded, these payments must be provided specifically for an identified expense, other than normal living expenses, and used for the purpose intended.  When a reimbursement, including a flat allowance, covers multiple expenses, each expense does not have to be separately identified as long as none of the reimbursements cover normal living expenses.  The amount by which a reimbursement exceeds the actual incurred expense shall be counted as income.

Neither the Food Stamp Act nor the regulations promulgated thereunder define or explain the term "normal household living expenses" beyond items "such as rent or mortgage, personal clothing or food eaten at home."  7 C.F.R § 273.9(c)(5).

There are two lines of cases that discuss 7 C.F.R § 273.9(c)(5).  The first line of cases involves challenges to the USDA's inclusion of income from educational grants in determining food stamp eligibility.  The plaintiffs in those cases argued that Section 2014(d)(3) of the statute exempted educational loans and grants from being counted as income and required the exclusion of funds paid directly to a student.  The courts concluded that so long as money was earmarked for a specific required fee or expense, the money could be excluded and not counted as income.

To the extent that money could be used for normal household expenses, the money was includable in income for food stamp purposes. *See Shaffer v. Block*, 705 F.2d 805 (1983), *Spicer v. Com., Dep't of Public Welfare*, SE Pa. Commonwealth 558 (1981) 428 A.2d 1008.

The second line of cases dealt with the inclusion into food stamp income of "energy reimbursements."  Under 2014(d)(11), payments or reimbursements for energy assistance are excluded from food stamp income.  The USDA included reimbursements from the Department of Housing and Urban Development (HUD), Farmers Home Administration (FHA) and Public Housing Authority (PHA) as income received by food stamp beneficiaries for food stamp eligibility.  The courts generally found that to the extent that money was paid directly to service providers for energy related utilities, heating and cooling, and not directly to food stamp beneficiaries, the funds could be excluded.  *See Estey v. Commissioner, Maine Dep't of Human Services*, 21 F.3d 1198 (1994), *Baum v. Yeutter*, 750 F. Supp. 845 (1990), *Baum v. Espy*, 840 F. Supp. 943 (1993).

While all of the cases cite and make reference to "normal household living expenses" none of them go beyond the express language of the regulation to identify items other than "rent or mortgage, personal clothing, or food eaten at home."

In supplemental briefs requested by this Court, the Department argued that in *O'Bryant v. Idaho Dept. of Health & Welfare*, 841 F. Supp. 991 (D. Id. 1993), the court recognized public utility expenses as non-excludable expenses.  However, this Court concluded that the case dealt with unrestricted checks paid to a food stamp applicant and does not apply here.

7 C.F.R. § 273.9(c) provides examples of reimbursements which are not considered to be a gain or benefit to the household.  One of those examples of excludable reimbursements, 273.9(c)(5)(i)(C), include "medical or dependent care reimbursements."

Also, as noted in the statutory definition of excluded income and the regulations, transactions which are of no benefit or gain to Hill and are not money paid directly to the household cannot be counted as income to Hill.

The trustee of the Trust reimbursed vendors for past and future expense amounts which did not exceed the actual expenses, and which were not for normal household expenses.  The applicable regulations, both 273.9(c)(1) and 273.9(c)(5), identify normal household living expenses as items "such as rent, mortgage, personal clothing and food eaten at home."  The vendor reimbursements the Department counted as income included the reimbursement of three months premiums on a life insurance policy on Hill's life, reimbursement for two months of cable television and one month of telephone service and a one month bus pass.  Also counted as income were reimbursements for medications for Hill.  The Trust also reimbursed Hill for $105 for clothing in January and $180 in February, which Hill concedes was a normal household living expense and was properly includable as unearned income for those months.  In this case the vendor payments and reimbursements, other than for clothing, were not "normal household living expenses" as that term is used in 7 CFR § 273.9(c)(5), and therefore should have been excluded from Hill's unearned income calculation under 7 C.F.R. §§ 273.9(c)(1)(v) and 273.9(c)(5).

The Department also cites as support for its position that the intra-trust transfers for vendor payments and reimbursements should be imputed as income, an email exchange between

the Food and Nutrition Service of the U.S. Department of Agriculture ("FNS") and the Department, regarding inquiry about the handling of Hill's case, wherein FNS opined, "We believe UT handled this case correctly."   The email exchange includes a document titled Attachment 10 to Policy Letter 09-03 – Subject: Treatment of Payments Made from a Special Needs Trust ("Policy Letter").   The Department submitted the email exchange, including the Policy Letter, as attachments to the Affidavit of Erin Cockerham, which was enclosed as part of the Memorandum in Support of Defendant's Motion for Summary Judgment (Docket no. 11). The email and Policy Letter are disregarded by the Court under the hearsay rule, for failure to disclose the identity of a potential expert witness within the discovery period, and under Fed. R. Evid. 702.

## ORDER

IT IS HEREBY ORDERED, that Defendant's Motion for Summary Judgment[4] is DENIED and Plaintiff's Motion for Summary Judgment[5] is GRANTED.

IT IS FURTHER ORDERED THAT:

1.      Defendant shall recalculate Plaintiff's food stamp eligibility accordingly, excluding intra-trust transfers, vendor payments and reimbursements for medical expenses, telephone service, cable TV service, life insurance premiums and the bus pass from unearned income calculations, and providing all deductions for which Plaintiff qualifies.

2.      The pretrial set August 14, 2012 and the trial set August 27, 2012 are STRICKEN.

---

[4] Docket no. 10, filed March 13, 2012.

[5] Docket no. 13, filed March 13, 2012.

3.       The Clerk of the Court is directed to close this case.


Dated August 15, 2012.

BY THE COURT:

David Nuffer
United States District Judge